IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CADARRYL T. BODY,
      Petitioner,

vs.                                 Case No.:  3:11cv323/LAC/EMT

KENNETH S. TUCKER,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

      This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1).  Respondent filed an answer and relevant portions of the state court record (doc. 17).  Petitioner filed a reply (doc. 24).

      The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

## I.      BACKGROUND AND PROCEDURAL HISTORY

      The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 17).[1]  Petitioner was charged in the Circuit Court in and for Escambia County, Florida, Case No. 2007-CF-1406, with one count of aggravated battery with great bodily harm and

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 17).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

with a weapon (Ex. B).  Following a jury trial, he was found guilty as charged (Exs. D, E; *see also* doc. 17 at 2).  On September 18, 2007, Petitioner was sentenced as a prison releasee reoffender to thirty (30) years of imprisonment, with pre-sentence jail credit of 181 days (Exs. F, G).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D07-5025 (Exs. H, I).  The First DCA affirmed the judgment per curiam without written opinion on October 23, 2008, with the mandate issuing November 10, 2008 (Ex. L). Body v. State, 992 So. 2d 252 (Fla. 1st DCA 2008) (Table).  Petitioner did not seek further review.

On November 24, 2008, Petitioner filed a motion to correct illegal sentence, pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure (Ex. M).  The state circuit court summarily denied the motion on February 6, 2009 (Ex. N).  Petitioner attempted to appeal the decision; however, he never filed a notice of appeal in the state circuit court and instead only sent the notice of appeal to the State Attorney's Office and the Attorney General's Office (Ex. O; *see also* Ex. P).

On August 3, 2009, Petitioner filed a motion for postconviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. Q).  In an order rendered September 9, 2009, the state circuit court struck the motion as facially insufficient, without prejudice to Petitioner's filing an amended motion "within a reasonable time" (Ex. R).  Petitioner filed an amended motion on November 24, 2009 (Ex. S).  The state circuit court summarily denied it on April 21, 2010 (Ex. T). Petitioner appealed the decision to the First DCA, Case No. 1D10-3243 (Ex. V).  The First DCA affirmed the judgment per curiam without written opinion on October 11, 2010, with the mandate issuing December 9, 2010 (Ex. Y).  Body v. State, 48 So. 3d 938 (Fla. 1st DCA 2010) (Table).

Petitioner filed the instant federal habeas action on July 5, 2011 (doc. 1).  Respondent deliberately waived the statute of limitations defense; therefore, the court will not address it (doc. 17 at 7).[2]  *See* Wood v. Milyard, — U.S. –, 132 S. Ct. 1826, 182 L. Ed. 2d 733 (2012) (federal court

---

[2] The undersigned disagrees with Respondent's position that Petitioner filed an appeal of the state circuit court's denial of his Rule 3.800(a) motion.  The "mailbox rule," which provides that a document is deemed filed on the date plaintiff/petitioner delivered it to prison authorities for forwarding to the court clerk, *see* Houston v. Lack, 487 U.S. 266, 276, 108 S. Ct. 2379, 2385, 101 L. Ed. 2d 245 (1988), did not render the notice of appeal filed, because Petitioner did not deliver it to prison authorities for forwarding to the court clerk.  Instead, he delivered it to prison authorities for forwarding only to the State Attorney's Office and the Attorney General's Office (Ex. O).  Petitioner's having failed to file an appeal of the circuit court's order rendered February 6, 2009, the Rule 3.800(a) motion was pending only until the time for filing an appeal expired on March 9, 2009.  The federal limitations period was thus tolled only until March 9, 2009, not August 3, 2009, as Respondent argues (*see* doc. 17 at 6).  This issue is dispositive

abused its discretion by considering sua sponte the timeliness of the federal habeas petition, where the State deliberately and intelligently forfeited its limitations defense by stating it "[was] not challenging, but [did] not concede, the timeliness of the petition" and addressed the merits of the petitioner's claims).

II.    STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19.  In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  The appropriate test was described by Justice O'Connor as follows:

---

of the timeliness issue.

[3] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If

the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."  Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'"  Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87 (Jan. 19, 2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  See Gill, supra at 1291 (citing Harrington, 131 S. Ct. at 786).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  See Harrington, 131 S. Ct. at 786; see also Gill, supra, at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining

that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see e.g. Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. See Gill, 633 F.3d at 1292. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. Id.

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. See Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is

in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

III.   EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[4] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower court with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982).  In Anderson,

---

[4] Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
　　　　(A)  the applicant has exhausted the remedies available in the courts of the State; or
　　　　(B) (i)  there is an absence of available State corrective process; or
　　　　　　(ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt. 459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law." Anderson, 459 U.S. at 7 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim. Id., 459 U.S. at 7 and n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  Id.

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364.  The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[5]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." Duncan, 513 U.S. at 365–66.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).  In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in

---

[5] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.  513 U.S. at 366.

conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  *Id.*, 541 U.S. at 32.  This language, while not part of the Court's holding, provides helpful instruction.  With regard to this language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'"  McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).  This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[6]

The Eleventh Circuit, prior to Duncan, had broadly interpreted the "fair presentation" requirement.  After Duncan, however, the Eleventh Circuit has taken a more narrow approach.  For example, in Zeigler v. Crosby, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution.  345 F.3d 1300, 1307 (11th Cir. 2003).  The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words:  "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution.  *Id.* at 1308 n.5.  The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United

_____

[6] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law."  McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments.  *Id.*

States Constitution and cited no federal cases.  The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review.  *See* O'Sullivan, 526 U.S. at 839–40, 848; Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See* Coleman v. Thompson, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine.  Bailey, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question.  *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner. Ford v. Georgia, 498 U.S. 411, 424–25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision.  Judd v. Haley, 250

F.3d 1308, 1313 (11th Cir. 2001).  First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[7]  Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.  Third, the state procedural rule must be adequate.  *Id.*  The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Id.*

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice.  Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)).  Lack of counsel or ignorance of available procedures is not enough to establish cause.  Tower, 7 F.3d at 210.  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  Schlup, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

*Id.*

Within this framework, the court will review Petitioner's claims.

IV.    PETITIONER'S CLAIMS

---

[7] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

<u>Ground One:</u>  "The state court in denying the issue on direct appeal denied Petitioner's federal right to a fair trial in violation of the Sixth and Fourteenth Amendments of the United States Constitution as the witness trial testimony created reasonable doubt and not competent substantial evidence supporting the Petitioner's conviction."

Petitioner contends the evidence was insufficient to support his conviction, in violation of his federal due process rights (doc. 1 at 4–5).  Specifically, Petitioner argues the testimony of Jennifer Jackson regarding whether Petitioner was the person who hit the victim with a bat was "vague and uncertain" and, therefore, unreliable (*id.*).

Respondent concedes Petitioner raised this claim on direct appeal of his conviction, and the state court adjudicated the claim on the merits (doc. 17 at 13–14).  However, Respondent "does not concede or waive exhaustion" (*id.* at 14 n.5).[8]  Respondent contends the state court's adjudication of the claim was not contrary to or an unreasonable application of clearly established federal law (*id.* at 14–21).

        1.      Clearly Established Federal Law

As an issue of federal law, Petitioner's claim derives from the Fourteenth Amendment due process requirement that the evidence presented at trial be sufficient to convict.  In determining whether Petitioner's conviction was obtained with constitutionally infirm evidence, reference must be made to the substantive elements of the offense as defined by state law.  <u>Jackson v. Virginia</u>, 443 U.S. 307, 324 & n.16, 99 S. Ct. 2781, 2792 n.16, 61 L. Ed. 2d 560 (1979).  To satisfy the constitutional requirement of due process during trial, the State must prove beyond a reasonable doubt every fact that constitutes an essential element of the crime charged against the defendant.  <u>In re Winship</u>, 397 U.S. 358, 364, 90 S. Ct. 1068, 1073, 25 L. Ed. 2d 368 (1970).  When reviewing a claim of insufficient evidence, the proper inquiry is not whether the reviewing court itself believes that the evidence established guilt beyond a reasonable doubt, but "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  <u>Jackson</u>, 443 U.S. at 319 (citation omitted).  The court should not reweigh the evidence but should view it in the light most favorable to the jury's

---

[8] Respondent's refusal to take a position on exhaustion constitutes noncompliance with the court's order directing Respondent to file an answer to the petition (doc. 6).  The order states, ". . . the answer shall . . . state whether Petitioner has exhausted his state remedies, . . ." (*id.*).

verdict.  *Id.*  Because jurors are free to evaluate the credibility of testimony and the weight of the evidence, the court should assume that all conflicting inferences were resolved against the defendant. *Id.* at 326.  "It is only where, after viewing the evidence in its most favorable light and making all credibility decisions in favor of the state the evidence still fails to at least preponderate in favor of the state, that we become concerned with conflicting inferences."  Cosby v. Jones, 682 F.2d 1373, 1383 (11th Cir. 1982) (footnote omitted).  The test under Jackson is a limited one, and it does not require that the evidence rule out every hypothesis except that of guilt beyond a reasonable doubt.  *Id.*; Wilcox v. Ford, 813 F.2d 1140, 1143 (11th Cir. 1987).  "The simple fact that the evidence gives some support to the defendant's theory of innocence does not warrant the grant of habeas relief."  Wilcox, 813 F.2d at 1143.

2.      Federal Review of State Court Decision

Petitioner raised this claim on direct appeal of his conviction (Ex. I).  The First DCA affirmed the judgment of conviction and sentence without written opinion (Ex. L).  Although the state court's denial of Petitioner's claim without opinion provides no guidance to this court in determining the rationale for its decision, under the "contrary to" prong of § 2254(d)(1), the state court need not cite federal law "so long as neither the reasoning nor the result of the state court decision contradicts the Supreme Court's precedents.  *See* Early, 537 U.S. at 8.  Additionally, Petitioner is not entitled to relief under the "unreasonable application" prong unless he demonstrates the decision is objectively unreasonable.  *See* Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245,  1256 (11th Cir. 2002).

Petitioner was convicted of aggravated battery causing great bodily harm and with a weapon, as charged pursuant to Florida Statutes Sections 775.087(1) and 784.045(1)(a)1. (Exs. B, E, G).  As relevant, Section 784.045 provides:

> (1)(a) A person commits aggravated battery who, in committing battery:
> 1. Intentionally or knowingly causes great bodily harm, permanent disability, or permanent disfigurement; . . .
> * * *
> (2) Whoever commits aggravated battery shall be guilty of a felony of the second degree . . . .

Fla. Stat. § 784.045(1)(a)1. (2007).  As relevant, section 775.087 provides:

> (1) Unless otherwise provided by law, whenever a person is charged with a felony, except a felony in which the use of a weapon or firearm is an essential element, and

during the commission of such felony the defendant carries, displays, uses, threatens to use, or attempts to use any weapon or firearm, or during the commission of such felony the defendant commits an aggravated battery, the felony for which the person is charged shall be reclassified as follows:
* * *
(b) In the case of a felony of the second degree, to a felony of the first degree.

Fla. Stat. § 775.087(1)(b) (2007).

The trial court instructed the jury on the elements of the crime as follows:

Cadarryl Tierre Body, the defendant in this case, has been accused of the crime of aggravated battery with great bodily harm and with a weapon. I'm now going to instruct you on the offense of aggravated battery. To prove the crime of aggravated battery, the State must prove the following two elements beyond a reasonable doubt. The first element is the definition of battery. No. 1, Cadarryl Tierre Body intentionally touched or struck Otha Tillman Bettis against his will, or intentionally caused bodily harm to Otha Tillman Bettis, and Cadarryl Tierre Body, in committing the battery, intentionally or knowingly caused great bodily harm, permanent disability or permanent disfigurement to Otha Tillman Bettis.

If you find that Cadarryl Tierre Body committed an aggravated battery and you also find that during the commission of the crime, he carried, displayed, used, threatened to use or attempted to use a weapon, you should find him guilty of aggravated battery with a weapon.

A weapon is legally defined to mean any object that could be used to cause death or inflict serious bodily harm.

If you find only that the defendant committed an aggravated battery, but did not carry, display, use, threaten to use or attempt to use a weapon, then you should find him guilty only of aggravated battery.

(Ex. D at 261–62). *See* Fla. Stat. §§ 775.087(1); 784.045(1)(a)1. (2007).

Otha Bettis, the victim, testified at trial that on the evening of March 16, 2007, his fiancée, Charot Stewart, came home and told him she had an altercation or argument with Stacy Dees (Ex. D at 70, 72). Mr. Bettis testified that he, Ms. Stewart, a friend Kenny Thornton, and several children got in his truck and went to Attucks Court, the apartment complex where Stacy Dees lived (*id.* at 70–71). Mr. Bettis testified that his fiancée and Ms. Dees continued to argue, and Ms. Dees's daughter, Jamia, had a bat in her hand (*id.* at 71, 86). Mr. Bettis testified he told Ms. Dees and Jamia they were not going to fight Ms. Stewart with the bat (*id.* at 71). He testified that as he and Ms. Stewart were

walking away, back to his truck, Petitioner, Stacy Dees, Jamia, and others started walking behind them (*id.* at 72, 75).   He testified Ms. Stewart and Ms. Dees were still arguing when they reached the end of the road (*id.* at 72).   Bettis testified he turned around and saw that Stacy Dees had the bat in her hand, so he "got in the middle of them" and told them they were not going to fight her with the bat (*id.* at 72, 86).   He testified Ms. Dees gave the bat to Petitioner, and "he was just like swinging the bat around and like hit me on my arm a little bit" (*id.* at 72, 74–75, 86).   Bettis testified Petitioner "went to [ ] backing up [ ] like he was fixing to swing the bat again at me, so Bettis "took off running" (*id.* at 72).   Bettis testified the bat was "a little, small blue—blue-and-chrome baseball bat," but he did not get a good look at it as he was being chased (*id.* at 74).   Bettis testified that after he was hit in the arm, the following occurred:

> A.  Two of them, they had caught me. And one—one of them was holding me from behind, and I had ahold of one of them.   And I pushed one and turned around to try to push the other one, and Mr. Body came up from the other side.   And I got hit and just laid out in the middle of the road.

> Q [by the prosecutor].  So how many people, then, ultimately chased you and caught up with you?

> A.  Three.

> Q.  Three people?  Did any of those other people have bats?

> A.  No, ma'am.

(Ex. D at.75–76).   Bettis testified there were street lights all around the area (*id.* at 86).   Bettis identified State's Exhibit 1 as a photographic lineup that a police officer showed him (*id.* at 78).   He testified he identified the person in the sixth photograph at the bottom of the page as the person who hit him with the bat, and he placed his initial near the photograph (*id.* at 78–79; *see* Ex. W, attachment).  The photographic line-up was admitted into evidence.   The prosecutor asked Mr. Bettis whether he saw the person who hit him with the bat in the courtroom, and Bettis identified Petitioner (Ex. D at 79).   Bettis testified he was hit on the back of the left side of his head (*id.*).   He testified he woke up in Baptist Hospital (*id.*).   He testified he was in the hospital for one and a half weeks, and was still under a doctor's care at the time of trial, five months later (*id.* at 77).   Bettis testified he still suffered constant headaches and dizziness and "can't move around as much" (*id.*).

When questioned by defense counsel whether he actually saw the person who hit him with the bat, Bettis responded, "I know the last person that had the bat before I ran, he [Petitioner] started running, too, and he was coming behind me.  The other two were already up on me." (*id.* at 87–88).

Investigator Greg Gordon testified he developed the photographic line-up that Mr. Bettis viewed  (Ex. D at 91).  He described the procedure he used in assembling the photographs and showing them to Mr. Bettis (*id.* at 92–95).  Investigator Gordon testified Mr. Bettis showed no hesitation when he identified Petitioner as the person who hit him with the bat (*id.* at 94).

Jennifer Jackson testified that she lived at Attucks Court with her mother (Ex. D at 99).  She testified at approximately 11:00 p.m. or midnight on March 16, 2007, she heard two females arguing, so she went out her front door and saw her neighbor, Annie Boykin, taking Charot Stewart back to Stewart's vehicle (*id.* at 100–01).  Ms. Jackson testified that Charot Stewart and Stacy Dees were arguing, and she saw Dees walking towards Stewart with a bottle in her hand (*id.* at 101).  Ms. Jackson testified Ms. Stewart left, so she (Jackson) went back to bed (*id.*).  She testified she later heard arguing and again went out her front door (*id.* at 102).  She saw Charot Stewart and Petitioner standing "right in front of my house" (*id.* at 102, 104).  Ms. Jackson saw Stacy Dees, Jamia Dees, and Petitioner come out of Dees's apartment, and Stacy Dees was carrying an aluminum bat (*id.* at 102–03).  Ms. Jackson said Stacy Dees and Charot Stewart were arguing, and other people were encouraging Dees to beat Stewart (*id.* at 103).  Jackson testified she "was pulling Charot back, you know, because I didn't have anything to do with it.  I was just pulling her back, . . . trying to tell her to just come on and just leave." (*id.*).  Jackson testified, "when I turned around, he came right—he came just out from nowhere swinging a bat, and it like to hit me in my face." (*id.* at 103–04, 106).  Ms. Jackson testified Petitioner was swinging the bat very fast, and she could feel the whiff from his swing (*id.* at 104).  She testified Petitioner ran after Otha Bettis with the bat (*id.* at 104, 106).  She testified two others ran after Bettis as well (*id.* at 107).  Ms. Jackson testified she saw Petitioner hitting Bettis with the bat (*id.* at 108).  She stated, "I could see him.  I could see him hitting him with the bat from—from my front porch because the light pole's down there." (*id.* at 123).  Ms. Jackson testified after Bettis was on the ground, she "went down and looked at him, and he was—he was messed up real bad." (*id.* at 108).  Ms. Jackson identified Petitioner as the person who hit Mr. Bettis with the bat

(*id.* at 110).  She testified that after the beating, Petitioner apologized to her for almost hitting her with the bat (*id.* at 127–28).

Dr. James Leker, an emergency department physician at Baptist Hospital, testified he examined Otha Bettis (Ex. D at 138–39).  He testified Bettis arrived just after midnight (*id.* at 140–41).  Dr. Leker testified that he observed a large laceration on the back left side of Bettis's skull and bruises on his face and head (*id.* at 141–43).  He testified a CAT scan showed blood within the lining of the brain and a depressed skull fracture (*id.* at 142).  He testified there was evidence of "a communication between the outside and the brain because there was air within the brain, which is called pneumocephalus" (*id.*).  Dr. Leker testified that he closed the laceration with approximately twelve (12) staples (*id.* at 144).  On cross-examination, Dr. Leker testified there was no way to distinguish the object with which Mr. Bettis was hit (*id.* at 146).

Dr. Mark Giovanini, a neurosurgeon, testified he examined Otha Bettis the night he was received at Baptist Hospital (Ex. D at 165–66).  He testified Bettis had a normal neurological examination, except he was "a little confused" (*id.* at 168).  Dr. Giovanini testified he admitted Bettis to the hospital for observation (*id.* at 169).  He testified he continued to see Bettis for followup visits after his release from the hospital, and he observed that Bettis had continued headaches and occasional visual disturbances (*id.* at 169–70).  Dr. Giovanini testified that as of the date of trial, Mr. Bettis had not been released from his care (*id.* at 170).

The defense called David Dale, Jr., a childhood friend of Petitioner's (Ex. D at 176–77).  Mr. Dale testified that at 8:00 p.m. on March 16, 2007, he and Petitioner went to William Ford's house in Baggett Court (*id.* at 177–78, 180).  He testified they listened to music for approximately two (2) hours, and then Petitioner walked across the street to the apartment of his brother's girlfriend (*id.* at 178–79).  Mr. Dale testified this other apartment was in his line of sight from Mr. Ford's house, and he never saw Petitioner leave the other apartment that night (*id.* at 179).  Mr. Dale admitted he left Mr. Ford's house "a little after 10:00" (*id.* at 179, 181).  On cross-examination, he admitted it was possible that Petitioner left the other apartment without him seeing him leave (*id.* at 182).  He also admitted he did not know where Petitioner was at 11:30 that evening, because he was at home asleep at that time (*id.* at 187).  Mr. Dale admitted he had previously been convicted of seven felonies and three crimes involving dishonesty (*id.* at 182–87).

Jamia Dees testified she was Petitioner's girlfriend (Ex. D at 189). She testified she lived with her mother, Stacy Dees, at 132 Attucks Court (*id.* at 189–90). Ms. Dees testified that at approximately 1:00 in the morning she heard her mother arguing with another woman outside (*id.* at 190–91). She testified the other woman left, and her mother came in the house (*id.* at 191). Ms. Dees testified the other woman came back approximately ten (10) minutes later accompanied by a man (*id.* at 191–92). She testified the man broke the screen door and attempted to kick in the front door (*id.* at 192, 194). Ms. Dees testified she walked outside the apartment, and her mother stood behind her on the porch (*id.* at 196). She testified several people came from around the corner, and "next thing I know, one swung, he [the victim] started running, and all of them started chasing him" (*id.* at 197–98). Ms. Dees testified her mother pulled her back inside the house and locked the door (*id.*). She testified no one had a bat that night (*id.* at 198). She also testified Petitioner was not present when this occurred, but he came to her apartment approximately five (5) minutes after a police officer interviewed them (*id.* at 18–200). On cross-examination, Ms. Dees admitted she did not see who hit the victim with the bat, because she was inside the house when it happened (*id.* at 205). She also testified she did not know where Petitioner was when the beating occurred (*id.*). She testified it was possible that Petitioner could have run down the street, hit the victim, and come to her back door (*id.* at 209).

Petitioner testified he was previously convicted of one felony, possession of a controlled substance (Ex. D at 212). He testified that at approximately 8:00 p.m. on March 16, 2007, he hung out and listened to music with David Dale and William Ford at Baggett Court (*id.* at 212–13). He testified he went to his brother's girlfriend's house at 9:45–10:00 p.m. (*id.* at 214). He testified that around midnight, he walked to Ms. Dees's house (*id.* at 214–15, 221). Petitioner testified when he arrived, he saw the police, so he went to the back door of Ms. Dees's house, because he previously was in trouble for trespassing (*id.* at 216). He testified he never chased the victim or hit him with a bat (*id.* at 217). He further testified he had never seen the victim before, and he had no knowledge of how the crime occurred (*id.*). Petitioner denied he apologized to Jennifer Jackson for almost hitting her (*id.* at 224).

Viewing the evidence in the light most favorable to the prosecution, the undersigned concludes that the jury could have found the presence of each essential element of aggravated battery with a

weapon beyond a reasonable doubt.  Therefore, Petitioner failed to demonstrate that the First DCA's denial of his due process claim was contrary to or an unreasonable application of clearly established federal law.

> **B.**    Ground Two:  "The state court order denying the postconviction motion denied Petitioner's rights under the guarantee of those federal rights protected by the Sixth and Fourteenth Amendments of the United States Constitution because trial counsel prior to trial failed to timely file a motion seeking to suppress Petitioner's unlawful identification."

Petitioner contends trial counsel was ineffective for failing to seek suppression of the victim's identification of him as his assailant (doc. 1 at 5–7).  He asserts the victim could not describe or identify his assailant on the night of the crime, and he could not identify Petitioner as his assailant during a bond reduction hearing (*id.* at 6).  Petitioner contends if defense counsel had sought suppression of the identification, it would have been suppressed based upon the factors set forth in Neil v. Biggers, 409 U.S. 188 (1977) (doc. 24 at 6).

Respondent concedes Petitioner presented this claim in his amended Rule 3.850 motion, and the state court adjudicated the claim on the merits  (doc. 17 at 21–22).  Respondent contends the state court's adjudication of the claim was not contrary to or an unreasonable application of clearly established federal law (*id.* at 23–26).

> **1.**    Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668 (1984).  To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  *Id.* at 687–88.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  *Id.* at 697.

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one."  Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).  The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms."  Strickland, 466 U.S. at 688–89.  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from

counsel's perspective at the time." *Id.* at 689.  If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do." Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15).  Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).  Counsel's performance is deficient only if it is "outside the wide range of professional competence." Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").  "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317).  Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'" *Id.* (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high.  *See* Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002).  The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Id.* (quoting Strickland, 466 U.S. at 693).  However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome. Strickland, 466 U.S. at 693–94.  Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694.  Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence. Williams v. Taylor, 529 U.S. at 405–06.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Strickland, 466 U.S. at 694–95. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. Further, when the claimed error of counsel occurred at the guilt stage of trial (instead of on appeal), Strickland prejudice is gauged against the outcome of the trial, not on appeal. *See* Purvis v. Crosby, 451 F.3d 734, 739 (11th Cir. 2006) (citing Strickland, 466 U.S. at 694–95).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. Strickland, 466 U.S. at 698; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999).

2.      Federal Review of State Court Decision

Petitioner raised this claim as Amended Ground One in his amended Rule 3.850 motion (Ex. S at 3–5). The state circuit court identified the two-pronged Strickland standard as the legal standard applicable to Petitioner's ineffective assistance of counsel claims (Ex. T at 1–2). The court adjudicated Ground One as follows:

> The victim identified Defendant as his attacker in a photo lineup presented by a police investigator several days after the incident. Defendant claims that defense counsel should have made a motion to suppress this identification as unreliable. Defendant also claims that counsel should have made a motion to suppress the victim from identifying Defendant at trial as his attacker because "there is a reasonable probability that there was an irreparable misidentification."
>
> In order to demonstrate that counsel was deficient for failing to file such a motion, Defendant must prove that the motion was warranted. See Kormondy v. State, 983 So. 2d 418, 430 (Fla. 2007) (trial counsel was not deficient for failing to argue a meritless motion to suppress).
>
> Defendant contends that the photo lineup identification should have been suppressed based on the factors laid out in Neil v. Biggers, 409 U.S. 188 (1977). However, "the criteria listed in Biggers are offered as measurements of the totality of the circumstances where there has been an impermissively [sic] suggestive out-of-court identification procedure." J.L.K. v. State, 474 So. 2d 390, 392 (Fla. 1st DCA 1985).

While a photographic spread consisting of several similar looking persons is not impermissibly suggestive, a photographic lineup which contains only one photograph matching the description of the accused, or some other differentiating notation is impermissibly suggestive. See M.J.S. v. State, 386 So. 2d 323 (Fla. 2d DCA 1980).

In the instant case, police investigator Gregory Gordon testified regarding his procedure in designing the photo lineup, which included selecting pictures of random individuals "that look the same."[FN 3: reference to trial transcript] Then he took the photo lineup of six individuals to the victim in the hospital:

> I told him I had a photo lineup for him to view. Any my—the way we do it is basically, we tell them that we have this photo lineup, and the subject may or may not be in it. We don't tell him if he is or he isn't . . . I just asked him to view the photo lineup, and if he sees the person, to just point to him and identify him . . . I tell them to be—I don't want them to guess. I don't want them to assume. I say, 'I need you to be a hundred-percent sure.' . . . I gave him the photo lineup; he flipped it over, and he viewed them. And that was on that date at 2:45, and that same minute, boom, he picked out photo number six [Defendant].[FN 4: reference to trial transcript]

Investigator Gordon further testified that the victim did not hesitate at all when he identified Defendant from the photo lineup.

In the instant motion, Defendant does not allege that the photo lineup was impermissibly suggestive. The record demonstrates that it was not. Consequently, the identification can be deemed reliable and not subject to suppression. Moreover, because the photo lineup was not illegal, a motion to suppress the victim's in-court identification of Defendant as his attacker would not have been successful.[FN 5: In gauging the reliability of an in-court identification, the trial judge must consider the following factors: (1) the prior opportunity the witness had to observe the alleged criminal act; (2) the existence of any discrepancy between any pretrial lineup description and the defendant's actual description; (3) any identification prior to the lineup of another person; (4) any identification by picture of the defendant prior to the lineup; (5) failure to identify the defendant on a prior occasion; (6) any time lapse between the alleged act and the lineup identification; and (7) any other factors raised by the totality of the circumstances that bear upon the likelihood that the witness' in-court identification is not **tainted by the illegal lineup**. State v. Dorsey, 5 So. 3d 702 (Fla. 2d DCA 2009) (emphasis added).] As a motion to suppress was not warranted, trial counsel was not deficient for failing to make such a motion and Defendant is not entitled to relief.

Additionally, defense counsel repeatedly attempted to discount the reliability of the victim's identification of Defendant throughout the trial. In his opening argument, he stated that there were three attackers and it was nighttime.[FN 6: reference to trial transcript]  Defense counsel also vigorously cross-examined the victim about the possibility of misidentification due to the low lighting and the other attackers involved.[FN 7:  reference to trial transcript]  Again during closing arguments, defense counsel argued that the victim could not accurately identify Defendant as his attacker.[FN 8:  reference to trial transcript]  Acts worthy of postconviction relief must be "outside the broad range of reasonably competent performance under prevailing professional standards." See generally Maxwell v. Wainwright, 490 So. 2d 927, 932 (Fla. 1986).

The instant claim is refuted by the record and is accordingly denied.

(Ex. T at 3–5).

Petitioner appealed the decision to the First DCA, attaching the photo lineup to his initial brief (Ex. W, attachment). The appellate court affirmed the lower court's decision without written opinion (Ex. Y).

The improper use of photographs by police may reduce the trustworthiness of a subsequent lineup or courtroom identification. Simmons v. United States, 390 U.S. 377, 383–84, 88 S. Ct. 967, 971, 19 L. Ed. 2d 1247 (1968). "The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error." 390 U.S. at 384. "[E]ach case must be considered on its own facts, and . . . convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photograph identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Id. "Where suggestive pretrial confrontations may have created a substantial likelihood of irreparable misidentification at trial, the core question is whether under the totality of the circumstances, the in-court identification was reliable." Jones v. Newsome, 846 F.2d 62, 64 (11th Cir. 1988).  The following factors should be considered in making that determination: (1) whether the witness had the opportunity to view the criminal at the time of the crime; (2) the degree of attention by the witness; (3) the accuracy of the witness's prior description; (4) the level of certainty displayed by the witness; and (5) the length of time between the crime and the identification. Neil v. Biggers, 409 U.S. 188, 199–200, 93 S. Ct. 375, 382, 34 L. Ed. 2d 401

(1972).  "While the ultimate conclusion as to the reliability of identification evidence is a mixed question of law and fact not governed by the Section 2254(d) presumption, each of the Neil v. Biggers factors is considered an issue of fact governed by the presumption."  Jones, 846 F.2d at 64.

In the instant case, the state court found as fact that the "pretrial confrontation" at issue, that is, the photo lineup, was not impermissibly suggestive.  Petitioner has not produced clear and convincing evidence to rebut this finding; therefore, it is presumed correct.  Indeed, the state court record, including the photo lineup itself and Investigator Gordon's testimony regarding the procedure he employed in preparing the lineup and presenting it to the victim, supports the state court's finding that the lineup was not impermissibly suggestive.  In the absence of any showing that the victim's pretrial identification of Petitioner was tainted by unduly suggestive procedures, defense counsel had no legal basis for seeking suppression of either the photo lineup or the victim's in-court identification.

Further, as the state court found, defense counsel placed the identification issue before the jury in his opening statement and closing argument, by rigorously cross-examining the victim about his ability to see who actually hit him with the bat, in light of the fact that he was hit in the back of the head, and the attack occurred at night, and by rigorously cross-examining the other eyewitness, Jennifer Jackson, about her ability to actually see who hit Mr. Bettis, given her vantage point and the time of night.

Petitioner failed to show that defense counsel's failure to seek suppression of either of the victim's identifications, out-of-court or in-court, was unreasonable.  Additionally, he failed to show a reasonable probability of a different outcome at trial had counsel sought suppression of either or both identifications.  Therefore, the state court's adjudication of the claim was not based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of Strickland.

C.    Ground Three: "The state court's order denying Petitioner's postconviction motion failed to address the federal constitution[al] violation of Petitioner's federal due process rights in the error in reclassifying the offense from a second degree felony to a first degree felony not authorized by law violated [sic] the Fourteenth Amendment of the United States constitution."

Petitioner asserts the jury acquitted him of aggravated battery with great bodily harm and found him guilty of aggravated battery with a weapon (doc. 1 at 8–9).  He contends Florida Statutes § 775.087 prohibited the reclassification of his offense from a second degree felony to a first degree

felony (*id.*).  He contends the state court's violation of state law deprived him of his federal due process rights (*id.* at 10).

Respondent contends Petitioner's claim is not cognizable in federal habeas, because it is purely a state law issue, despite Petitioner's couching it in terms of federal due process (doc. 17 at 26–30).  Respondent further argues Petitioner presented only a state law claim to the state courts (*id.*).

In Petitioner's Rule 3.800(a) motion, Petitioner claimed that the trial court could not properly reclassify his offense from a second degree felony to a first degree felony under Florida Statutes § 775.087, because a weapon was an essential element of the underlying offense (Ex. M at 3).  Petitioner cited only section 775.087 and a Florida case in support of his argument (*id.*).  The state circuit court denied the claim on state law grounds (Ex. N).  Petitioner did not properly appeal the decision.

In Amended Ground Two of Petitioner's amended Rule 3.850 motion, Petitioner raised a claim of trial court error in reclassifying his offense from a second degree felony to a first degree felony (Ex. S at 5–8).  Petitioner framed his claim of trial court error in terms of state law without making any reference to federal law, and in the body of his argument he made no specific reference to the United States Constitution or federal law, and he cited no federal cases.  He argued Florida law only.  Nothing in Petitioner's motion put the state court on notice that the issue was being presented as a federal constitutional claim.  In the state circuit court's order denying the claim, the state court addressed the claim as only a state law issue (Ex. T at 5–6).  In Petitioner's brief on appeal of the circuit court's decision, Petitioner again argued only Florida law and made no reference to federal law or federal cases (Ex. W at 12–14).  Based upon this record, the undersigned concludes Petitioner's claim of trial court error with respect to reclassifying the offense from a second degree felony to a first degree felony was not fairly presented to the state court as a federal constitutional claim and is thus unexhausted.

Now, any further attempt at exhaustion in the state courts would be futile, because Petitioner's claim would be procedurally barred under Florida law.  *See* <u>Rodriquez v. State</u>, 919 So. 2d 1252, 1262 n.7 (Fla. 2005) (holding that issues were procedurally barred because they should have been, but were not, raised on direct appeal); <u>Smith v. State</u>, 445 So. 2d 323, 325 (Fla. 1983) ("Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through

collateral attack."); *see also* Fla. R. Crim. P. 3.850(f) ("A second or successive motion may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the movant . . . . to asserts those grounds in a prior motion constituted an abuse of the procedure governed by these rules.").

As discussed *supra*, to overcome a procedural default such that this court may consider the merits of his claim, Petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice. Tower, 7 F.3d at 210; Parker, 876 F.2d 1470. Petitioner has not alleged cause for his default; nor has he alleged he is entitled to review of his claim through any recognized exception to the procedural bar. Therefore, Ground Three is procedurally defaulted and will not be considered by this court.[9]

> D.    Ground Four:  "The state court order in denying Petitioner's postconviction motion without an evidentiary hearing failed to address the federal violation of the Sixth Amendment of the United States Constitution guaranteed Petitioner the right to effective assistance of counsel and the protection of the Fourteenth Amendment right to due process of law because trial counsel failed to call alibi witness that was available to testify in trial."

Petitioner contends the state postconviction court violated his federal rights to due process and equal protection by failing to conduct an evidentiary hearing on his claim that counsel was ineffective for failing to call Stacy Dees as a witness at trial (doc. 1 at 9–10). Petitioner argues Rule 3.850(d) of the Florida Rules of Criminal Procedure required the state circuit court to attach to its order portions of the state court record that conclusively showed he was not entitled to relief (*id.*). Petitioner asserts the state court failed to attach portions of the record refuting his claim; therefore, the court was required to hold an evidentiary hearing (*id.*).

Respondent contends Petitioner's complaint of a defect in a state collateral proceeding does not present a cognizable basis for federal habeas relief (doc. 17 at 30–31). Respondent further contends Petitioner abandoned his ineffective assistance of counsel claim by challenging only the postconviction process, not the court's substantive adjudication (*id.* at 31). Additionally, without

---

[9] Moreover, the jury instructions and the verdict demonstrate that use of a weapon was not an essential element of the crime; rather, it was only a fact upon which a sentence enhancement was based (Ex. D at 261–62, Ex. E).

conceding or waiving exhaustion, Respondent notes that the state court adjudicated the merits of Petitioner's claims, within the meaning of § 2254(d) (*id.* at 31 n.9).

The Eleventh Circuit has repeatedly held that defects in state collateral proceedings do not provide a basis for habeas relief. *See* Carroll v. Secretary, DOC, 574 F.3d 1354, 1365 (11th Cir. 2009); Anderson v. Sec'y for Dep't of Corr., 462 F.3d 1319, 1330 (11th Cir. 2006) (per curiam); Quince v. Crosby, 360 F.3d 1259, 1262 (11th Cir. 2004); Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987) (per curiam). The reasoning behind this well-established principle is straightforward: a challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment—that is, the conviction itself—and thus habeas relief is not an appropriate remedy. *See* Carroll, 574 at 1365; Quince, 360 F.3d at 1261–62; Spradley, 825 F.2d at 1568. Furthermore, such challenges often involve claims under state law, for example, Florida Rule of Criminal Procedure 3.850, which governs the availability of, and procedures attendant to, post-conviction proceedings in Florida; and a state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved. *See* Carroll, 574 F.3d at 1365 (quoting McCullough v. Singletary, 967 F.2d 530, 535 (11th Cir. 1992)). Therefore, to the extent Petitioner claims that the state court violated his federal rights to due process and equal protection by summarily denying the claim without an evidentiary hearing, he is not entitled to relief. *Id.*

In Petitioner's reply to Respondent's answer, he appears to suggest he is also challenging the state court's substantive denial of his ineffective assistance of counsel claim (doc. 24 at 8–9). Therefore, the undersigned will review his challenge to the substance of the state court's adjudication of his claim.

        1.      Clearly Established Federal Law

The Strickland standard, set forth *supra*, governs this claim.

        2.      Federal Review of State Court Decision

Petitioner raised this claim as Supplemental Ground Three in his amended Rule 3.850 motion (Ex. S at 8–11). He asserted Stacy Dees would have testified as to when he arrived at her residence, and that he was not present when the crime occurred (*id.* at 9). He asserted her testimony would have

corroborated the trial testimony of her daughter, Jamia Dees, that he was not present at Stacy Dees's

apartment until after the crime occurred (*id.*).  The state circuit court adjudicated the claim as follows:

> Defendant claims that Stacy Dees's testimony would have corroborated the
> testimony of her daughter, who was also Defendant's girlfriend, Jamia Dees.
> Specifically, Defendant claims that Stacy Dees would have testified that Defendant
> was not at the scene of the incident until after the attack.
>
> Failure to present testimony of an alibi witness is not deficient for purposes
> of an ineffective assistance of counsel claim, where such testimony would have
> offered an incomplete alibi.  See Evans v. State, 995 So. 2d 933 (Fla. 2008).
>
> At trial, Jamia Dees testified that her mother was with her on the porch right
> before the incident occurred, "next thing I know, one swung, he started running, and all
> of them started chasing him. My mama [Stacy Dees] pulled me back in the house."[FN
> 12:  reference to trial transcript]  She further testified that she did not see the attack
> with the bat, but that shortly thereafter, Defendant was knocking on their back door.
> On cross-examination, Jamia Dees eventually conceded that it was possible that
> Defendant could have committed the battery and then knocked on her back door,
> because she did not see the attack.[FN 13:  reference to trial transcript]
>
> Even if Stacy Dees had testified as Defendant alleges, consistent with her
> daughter Jamia's testimony, she would not have provided a complete alibi for
> Defendant.  Because she was with Jamia, she also did not see that attack, and
> presumably would also testify that Defendant had time to perpetuate the attack before
> arriving at their house.  Accordingly, counsel was not deficient for failing to call Stacy
> Dees to testify.

(Ex. T at 7–8).

Petitioner appealed the decision to the First DCA, and the appellate court affirmed the lower

court's decision without written opinion (Exs. W, Y).

Counsel's decision whether to call a particular witness is a matter of trial strategy entitled to

great deference.  Chandler v. United States, 218 F.3d 1305, at 1314 n.14 (11th Cir. 2000) (citing

Waters v. Thomas, 46 F.3d 1506, 1512, 1518-19 (11th Cir. 1995) (en banc)).  If the record is not

complete regarding counsel's actions, then the courts should presume "that what the particular defense

lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some

reasonable lawyer might do."  *Id.* at 1314–15 n. 15.  "The mere fact that other witnesses might have

been available or that other testimony might have been elicited from those who testified is not a

sufficient ground to prove ineffectiveness of counsel."  Waters, 46 F.3d at 1514.  "Complaints of

uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978).

"[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit.  A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted).  Hence, Petitioner must first make a sufficient factual showing, substantiating the proposed testimony of the witness. Such evidence might be a sworn affidavit or deposition from the potential witness stating to what he would have testified.

Petitioner failed to show Stacy Dees would have provided testimony favorable to the defense. Petitioner did not present, in state court or this federal proceeding, evidence of actual testimony or an affidavit from Stacy Dees.  Moreover, as the state court found, it is apparent from the record that Jamia Dees testified without objection to all of the pertinent information Petitioner alleges Stacy Dees would have provided, that is, Petitioner was not at the apartment until after the crime occurred (Ex. D at 198–20, 205, 210).  Because the jury already heard the facts Petitioner contends Stacy Dees would have provided, Petitioner failed to show a reasonable probability the jury would have acquitted him if Stacy Dees had testified.

Petitioner failed to demonstrate that the state court's adjudication of his claim was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of Strickland. Therefore, he is not entitled to habeas relief on Ground Four.

E.      Ground Five:  "Petitioner in postconviction proceeding was denied the federal right to due process of law as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution because trial counsel rendered ineffective assistance for the failure to object to hearsay testimony in violation of the Constitution as the state court without an evidentiary hearing denied Petitioner's claim."

Petitioner contends defense counsel was ineffective for failing to object to the prosecutor's using hearsay statements of a non-testifying witness to cross-examine Petitioner, on the ground that doing so violated Petitioner's rights under the Confrontation Clause, as recognized in Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004) (doc. 1 at 11–12).

Respondent concedes Petitioner presented this claim to the state court in his amended Rule 3.850 motion, and the state court adjudicated the merits of the claim (doc. 17 at 32–34).  Respondent contends the state court's adjudication of Petitioner's ineffective assistance of counsel claim was not contrary to or an unreasonable application of clearly established federal law (*id.* at 34–35).

      1.      Clearly Established Federal Law

The <u>Strickland</u> standard, set forth *supra*, governs this claim.

      2.      Federal Review of State Court Decision

Petitioner raised this claim as Supplemental Ground Four in his amended Rule 3.850 motion (Ex. S at 11–13).  The state circuit court adjudicated the claim as follows:

> Defendant claims that defense counsel should have objected when Defendant was cross-examined as follows:
>
> > Q:  Do you know somebody named Joseph Chambers?
> >
> > A:  No.
> >
> > Q:  You don't remember speaking to him about this incident?
> >
> > A:  No.
> >
> > Q:  You don't remember telling him that you beat somebody, busted their head up real bad?
> >
> > A:  No.
> >
> > Q:  Bragged to him about it; isn't that correct?
> >
> > A:  No.[FN 20:  reference to trial transcript]
>
> To prove ineffective assistance of counsel based on failure to object at trial, "defendant must demonstrate 'that counsel had no excuse for overlooking the objections *and* that the outcome of the case would likely have been different has [sic] the objections been made'" <u>State v. Bouchard</u>, 922 So. 2d 424, 430–31 (Fla. 2d DCA 2006).  A confrontation clause violation occurs when testimony is admitted without an opportunity for cross-examination.  <u>See</u> generally <u>Happ v. Moore,</u> 784 So. 2d 1091, 1100–1101 (Fla. 2001).  In the instant case, no testimony of Joseph Chambers was admitted at trial.  Therefore, Defendant had no right to confront Mr. Chambers.  Because the above-referenced testimony on cross-examination was not improper, an objection was not warranted and counsel was not deficient for failing to make an

> objection.  Importantly, Defendant also cannot satisfy the "prejudice prong" as
> required by Strickland.  Joseph Chambers did not testify, and was not mentioned at any
> other juncture in the entire trial.  Even if the disputed testimony had been stricken, the
> Court finds that the outcome of the proceedings would not have been different, and
> accordingly, Defendant was not prejudiced by any inaction by counsel for failing to
> object.

(Ex. T at 10–11).

Petitioner appealed the decision to the First DCA, and the appellate court affirmed the lower court's decision without written opinion (Exs. W, Y).

The only questions which were arguably improper were, "You don't remember telling him that you beat somebody, busted their head up real bad?" and "[You] bragged to him about it; isn't that correct?"  If defense counsel had objected to these questions, the proper procedure would have been for the trial court to sustain the objection and instruct Petitioner not to answer.  Had this occurred, Petitioner would not have received the benefit of the jury's hearing his denials that he made such statements.  Further, even if the trial court took the additional step of instructing the jury to disregard each of the prosecutor's questions, the jury was essentially given this instruction when the trial court instructed them that they must decide the case based only on the testimony of the witnesses and the exhibits (Ex. D at 266) (emphasis added).  Moreover, considering all of the evidence adduced at trial, summarized *supra*, Petitioner failed to show a reasonable probability the jury would have acquitted him had defense counsel objected to the prosecutor's questions.

Petitioner failed to demonstrate that the state court's adjudication of his claim was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of Strickland.  Therefore, he is not entitled to habeas relief on Ground Five.

V.      CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542

(2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 10<u>th</u> day of July 2012.


                                    /s/ *Elizabeth M. Timothy*
                                    **ELIZABETH M.  TIMOTHY**
                                    **UNITED STATES MAGISTRATE JUDGE**


### <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**